IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**EDWIN ROMAN MALPICA-GARCIA,**
    Petitioner,

        v.

**UNITED STATES OF AMERICA,**
    Respondent.

\* \* \* \* \* \* \* \* \* \*

**CIVIL NO. 10-1020(PG)**
**RELATED CRIM. 04-217(PG)**

### OPINION & ORDER

Before the Court is Petitioner's 28 U.S.C. Sec. 2255 Habeas Corpus Petition (D.E. 2).[1]  Respondent filed a Response to the Petition (D.E. 5) and Petitioner filed a Supplemental Motion to his 2255 Petition (D.E. 6).  For the reasons discussed below, the Court finds the Petition shall be **DENIED** and the request for evidentiary hearing is also **DENIED;** Petitioner's Supplemental Motion is **DISMISSED WITH PREJUDICE.**

## I. BACKGROUND

On July 6, 2005, Petitioner, Edwin Román Malpica-García (hereinafter "Petitioner" or "Malpica-García") and five (5) additional co-defendants were charged in a Superseding Indictment by a Federal Grand Jury (Crim. D.E. 137).[2]  Petitioner was specifically charged in three (3) of

---

[1]D.E. is an abbreviation of docket entry number.

[2]Crim.D.E. is an abbreviation of criminal docket entry.

the five (5) counts of the Superseding Indictment.[3]

Count One (1) charged: From on or about November 28, 2003, up to including May 14, 2004, in the District of Puerto Rico and within the jurisdiction of this Court, all six (6) co-defendants, the defendants herein, did knowingly, wilfully, intentionally, and unlawfully combine, conspire, confederate and agree with each other and with other persons to the Grand Jury known and unknown, to commit an offense against the United States and any agency thereof, to wit: bank robbery of the BBVA bank, Cataño Branch, Cataño, Puerto Rico, a federally insured financial institution, in violation to Title 18, United States Code, Section 2113, and one or more of such persons did acts to effect the object of the conspiracy; all in violation of Title 18, United States Code, Section 371.[4] (Crim. D.E.

---

[3]The original Indictment was on May 26, 2004, Petitioner was also included in said Indictment in all three (3) counts of the original Indictment (Crim. D.E. 26).

[4]Petitioner is included in the following Overt Acts in furtherance of the conspiracy:
Overt Act Five (5): On or about May 13, 2004, co-defendants [1] Angel González Méndez, aka "Pito"; [2] Moraima Maldonado Martínez, aka "Moraima"; [3] Edwin Román Malpica García, aka "Sombra"; [4] William Valentín Mañón, aka "Wichi"; [5] Alexis García Heredia, aka "Alex", aka "Alexis"; [6] Francisco López Acevedo, aka "Frankie", met to discuss the planning to commit an armed bank robbery of the BBVA bank, Cataño Branch, Puerto Rico. Overt Act six (6): On or about May 14, 2004, co-defendant [1] Angel González Méndez, aka "Pito"; provided co-defendants [3] Edwin Román Malpica García, aka "Sombra"; and [4] William Valentín Mañón, aka "Wichi"; firearms to be used to commit the bank robbery of the BBVA bank, Cataño Branch, Puerto Rico. Overt Act Seven (7): On or about May 14, 2004, co-defendant [2] Moraima Maldonado Martínez, aka "Moraima"; provided co-defendants [3] Edwin Román Malpica García,

137).

Count Two (2) charges: On or about May 14, 2004, in the District of Puerto Rico and within the jurisdiction of this Court, all six (6) co-defendants, the defendants herein, aiding and abetting each other and aided and abetted by others to the Grand Jury known and unknown, did knowingly, willfully, intentionally, and unlawfully take from the person and presence of another, by force, and violence, and intimidation, property and money, that is, Two Hundred Thirty Thousand Seven Hundred Forty Seven Dollars ($230,747.00), in the custody, control and possession of a bank, to wit: BBVA bank, Cataño Branch, FDIC Cert. No. 19919-2, located in Cataño, Puerto Rico, an institution which deposits are insured by the Federal Deposit Insurance Corporation, and while committing said offense, did assault persons and put in jeopardy the life of any person by the use of a dangerous weapon and device; all in violation to Title 18, United States Code, Sections 2113(a)&(d) and 2.(Crim. D.E. 137).

---

aka "Sombra"; [4] William Valentín Mañon, aka "Wichi"; [5] Alexis García Heredia, aka "Alex", aka "Alexis"; [6] Francisco López Acevedo, aka "Frankie" a vehicle in order to commit the bank robbery of the BBVA bank, Cataño Branch, Puerto Rico. Overt Act Eight (8): On or about May 14, 2004, co-defendants [3] Edwin Román Malpica García, aka "Sombra"; [4] William Valentin Mañon, aka "Wichi"; entered the BBVA bank, Cataño Branch, Puerto Rico, using firearms assaulted two persons and took approximately Two Hundred Thirty Thousand Seven Hundred Forty Seven Dollars ($230,747.00), from said financial institution.(Crim. D.E. 137)

Count Three (3) charges: On or about May 14, 2004, in the District of Puerto Rico and within the jurisdiction of this Court, all six (6) co-defendants, the defendants herein, aiding and abetting each other and aided and abetted by others to the Grand Jury known and unknown, did knowingly, willfully, intentionally, and unlawfully possess, use and carry firearms, as that term is defined in Title 18, United States Code, Section 921(a)(3) in furtherance of and during and in relation to the commission of a crime of violence, as that term is defined in Title 18, United States Code, Section 924(c)(3), that is, an armed bank robbery in violation to Title 18, United States Code, Section 2113, as charged in COUNT TWO of the First Superseding Indictment, an offense which may be prosecuted in a Court of the United States. All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2 (Crim D.E. 137).

On August 1, 2005, Petitioner's Change of Plea Hearing was held. Petitioner plead guilty to all three counts of the Superseding Indictment in which he was charged.[5] (Crim. D.E. 165).

On December 19, 2005, Petitioner's Pre-Sentence Report was submitted (Crim. D.E. 214). On January 11, 2006, Petitioner's Sentencing Hearing was held (Crim. D.E. 229).

---

[5]Petitioner entered a "straight plea" meaning there was no agreement or Plea Agreement between Petitioner and the Government.

Malpica-García was sentenced as follows: as to Count One
(1) a term of imprisonment of sixty (60) months, a term of
Supervised Release of three (3) years and a Special
Monetary Assessment of one hundred (100) dollars; Count Two
(2) a term of imprisonment of two hundred and eighty (280)
months, said term to run concurrently with that imposed in
Count One, but consecutively with the imprisonment term
imposed as to Count Three (3); a Supervised Release Term of
five (5) years and a Special Monetary Assessment of one
hundred (100) dollars.  Count Three a term of imprisonment
of eighty four (84) months, to be served consecutively to
terms of imprisonment imposed in Counts One (1) and Two
(2), a term of Supervised Release of five (5) years and a
Special Monetary Assessment of one hundred (100) dollars
(Crim. D.E. 231).

     On January 13, 2006, Petitioner filed a Notice of
Appeal (Crim. D.E. 234).  On October 19, 2006, the First
Circuit Court of Appeals issued its Judgment in which it
vacated Petitioner's sentence and remanded the case to the
District Court due to an error in the Sentencing Guideline
calculations (Crim. D.E. 324).  On March 2, 2007,
Petitioner's Re-Sentencing Hearing was held.  Petitioner
was re-sentenced as follows: As to Count One (1) a term of
imprisonment of sixty (60) months, as to Count Two (2) a
term of imprisonment of two hundred (200) months.  The
terms of imprisonment of Counts One (1) and Two (2) to be
served concurrently with each other.  As to Count Three (3)

a term of imprisonment of eighty four (84) months to be served consecutively to the terms of imprisonment imposed in Counts One (1) and Two (2), for a total term of imprisonment of two hundred and eighty four (284) months. A term of Supervised Release of three (3) years was imposed as to Count One (1), five (5) years as to Counts Two and Three (3) to be served concurrently with each other; and a Special Monetary Assessment of one hundred (100) dollars as to each count for a total of three hundred (300) dollars (Crim. D.E. 395).

On March 6, 2007, Petitioner filed a Notice of Appeal (Crim. D.E. 396). On March 16, 2007, Petitioner's Amended Judgment was entered (Crim. D.E. 397). On March 28, 2007, Petitioner's Second Amended Judgment was entered (Crim. D.E. 409). On March 29, 2007, Petitioner's Third Amended Judgment was entered (Crim. D.E. 411). On June 6, 2007, Petitioner's Fourth Amended Judgment was entered.[6] (Crim. D.E. 437). On October 15, 2008, the First Circuit Court of Appeals issued its Judgment affirming Petitioner's sentence (Crim. D.E. 468). No petition for certiorari was filed and Malpica-García's conviction became final on January 23, 2009. On November 9, 2009, Petitioner filed a Motion of Extension of Time to file his 2255 Petition (Crim. D.E. 469). On November 12, 2009, the Court granted the

---

[6]None of the Amended Judgments entered alter the terms of imprisonment and how they are to be served as imposed by the Court in Petitioner's Re-Sentence on March 2, 2007.

extension requested (Crim. D.E. 470).  On January 14, 2010, Petitioner filed his 2255 Petition (D.E. 1), the same is timely.[7]

## II. DISCUSSION

In his 2255 Petition Malpica-García raises the following allegations of ineffective assistance of counsel: (1) counsel was ineffective in that she did not provide Petitioner with an explanation of the nature of the charges against him and the consequences of pleading guilty, as such his plea of guilty was involuntary and coerced; (2) counsel was ineffective in that she failed to properly advise Petitioner as to the potential use of the discovery received in his defense.  Petitioner also asserts a third allegation that his conviction was obtained by the use of evidence obtained as a result of an unlawful arrest and a final allegation of vindictive sentencing for failing to sign the proposed plea agreement.

A review of the record clearly indicates that Petitioner's claims are either meritless or simply wrong therefore the same shall be **DENIED** by the Court.

## Ineffective Assistance of Counsel Standard

The standard for an ineffective assistance of counsel claim is whether counsel's conduct so undermined the proper

---

[7]Pursuant to the Antiterrorism Death Penalty Act, Petitioner had one year as of January 23, 2009, the date his conviction became final, to file a timely 2255 Petition.  Therefore even without the extension of time he requested, the Petition was timely filed.

functioning of the adversarial process that the trial cannot be relied upon as having produced a just result <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668 (1984); <u>Lema</u> v. <u>United States</u>, 987 F.2d 48 (1st Cir. 1993). In order to succeed in a claim of ineffective assistance of counsel Malpica-García must show both incompetence and prejudice: (1) Petitioner must show that counsel's representation fell below an objective standard of reasonableness, and (2) Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, <u>Argencourt</u> v. <u>United States</u>, 78 F.3d 14 (1st Cir. 1996), <u>Darden</u> v. <u>Wainwright</u>, 477 U.S. 168 (1986), <u>Lockhart</u> v. <u>Fretwell</u>, 506 U.S. 364 (1993). Petitioner fails to meet this standard and the record so reflects it.

**Ineffective Assistance of counsel which resulted in an involuntary and coerced plea of guilty**

The first allegation raised by Petitioner relates to his plea of guilty. Malpica-Gracía alleges that due to counsel's failure in properly explaining the nature of the charges he faced and the consequences of him pleading guilty, his plea was coerced and not voluntarily made. The record of the Change of Plea Hearing completely contradicts Petitioner's argument.

Petitioner appered before the Court on August 1, 2005, in order to plead guilty (Crim. D.E. 165). Upon the parties informing the Court that there was no Plea

Agreement amongst them, and that Petitioner wished to plead guilty to the three counts he was charged in the Superseding Indictment, the Court proceeded with the Change of Plea Hearing.  Petitioner throughout the Change of Plea Hearing on numerous occasions was advised and explained the charges against him by both his counsel and the Court. Never once in the transcript of the Change of Plea Hearing does Petitioner state he does not understand the charges.

> THE COURT: Do you know what you have been charge in Count One?
>
> DEFENDANT: Yes.
>
> THE COURT: And do you know what you are being charged with in Count Two?
>
> DEFENDANT: Yes, I know that, too.
>
> THE COURT: And in Count Three?
>
> DEFENDANT:  Yes. (C.O.P. Tr. of 8/1/2005 at 6).
>
> THE COURT: Mr. Malpica, did your attorney explain to you what the maximum possible penalty provided in Count One is?
>
> DEFENDANT: Yes.
>
> THE COURT: Do you remember what was it she explained to you as to that?
>
> DEFENDANT: Yes.  A maximum of 25 years.
>
> THE COURT: In Count One?
>
> DEFENDANT: And Two Hundred and Fifty Thousand Dollars.

THE COURT: In Count One?  Isn't Count One a conspiracy under 371?

Ms. Doble-Salicrup: Yes, Your Honor.  That would be a maximum term of imprisonment of five years.

Ms. PLAZA MARTINEZ: That's correct, Your Honor. I was mistaking it with Count Two.  I'm sorry.

THE COURT: Okay.  Count One is a maximum of five years; a fine that could go up to Two Hundred and Fifty Thousand Dollars; a term of supervised release of two to three years; and One Hundred Dollars special monetary assessment.  Is that it?

DEFENDANT: Yes.

THE COURT: And Count Two?

DEFENDANT: A maximum of twenty-five years; a Two Hundred and Fifty Thousand dollar fine; and a supervised release of no more than five years.

THE COURT: And a One Hundred dollar special monetary assessment.

DEFENDANT: Yes.

THE COURT: And in Count Three?

DEFENDANT: A minimum of five years and a maximum of ten years.

MS. DOBLE-SALICRUP: Your Honor, it would be a minimum of seven years, as charged in the Indictment.

THE COURT: Is this term to be consecutive to any other sentence?

        MS. DOBLE-SALICRUP: That is so, Your Honor.

        (C.O.P. Tr. of 8/1/2055 at pp.13-14)

    The Court continued to explain to Petitioner, even using hypothetical examples, as to what consecutive sentences mean and how this would affect him.  The Court, in addition, proceeded to explain to Petitioner that having spoken to his attorney prior to the hearing, Petitioner was aware of his criminal record which allowed for the possibility of him being considered a career offender.  The Court then proceeded to explain to Petitioner what the term career offender means and how that qualification would affect his sentence (See C.O.P. Tr. of 8/1/2055 at pp. 19-21).  Further into the sentence the Court proceeded with the following questions:

        THE COURT: Mr. Malpica, has anybody threatened you in any way to induce you to plead guilty?

        DEFENDANT: No.

        THE COURT: Is anybody forcing you in any way to plead guilty?

        DEFENDANT: No.

        THE COURT: Has anyone offered you any rewards or anything of value to get you to plead guilty?

        DEFENDANT: No. (C.O.P. Tr. of 8/1/2005 at p. 22).

    Further into the Change of Plea Hearing, upon the Court asking Petitioner if he did what the Government stated Petitioner did in the Overt Acts of Count One of the First Superseding Indictment, Petitioner through his counsel,

informed the Court that he is not in agreement that he did not wish to accept the involvement of other people in the bank robbery, he was only willing to accept his personal involvement.  This led to a lengthy discussion between the Court and Petitioner's counsel as to the charges in Count One and how Petitioner could not plead half way.  When Petitioner's counsel asked that the Court allow Petitioner to speak on his own behalf, the following ensued:

> DEFENDANT: (through the interpreter.) I wanted to plead guilty this morning as far as my own responsibility is concerned, without mentioning anybody else.  I'm answering here for what I did.
>
> THE COURT: And what you did is you agreed with other people who are also charged with you as part of the conspiracy, to on May 14th go in the bank and rob the bank.  And that agreement included that you were going to drive a car that was going to be provided to you, and you were going to use weapons.
>
> That's what you agreed.  Your own acts, as you mentioned them, your own acts are your agreement to rob the bank, your agreement to be provided a car to be used during the bank robbery, and your agreement to use weapons.  Those are your own acts, agreements you did with other people, without giving names, but they are charged in the indictment; because, otherwise, if you agree with

somebody else that is not charged, that's not
included in the indictment.

So your own acts - - the problem is that,
different from Count Two and Three, Count One is
a conspiracy.  And a conspiracy in and of itself
is an offense.  And the conspiracy is an agreement
that you carried out with other people to rob the
bank.

And when you have a conspiracy, you have
agreements between, among various individuals.
All right?

MS. PLAZA MARTINEZ: Your Honor, I believe that
after this discussion with the defendant, the
defendant stands for accepting his guilt as to
Counts Two and Three, but he will not be accepting
his guilt as to Count One, because again - -

THE COURT: Okay. Then, will the government dismiss
Count One?

MS. DOBLE-SALICRUP: No, Your Honor. It's a
straight plea.

THE COURT: If we are going to trial, I'll go to
trial with the three of them, and not with one.

MS. PLAZA MARTINEZ: You see, Your Honor - -

THE COURT: I see what it is.

MS. PLAZA MARTINEZ: I see what it is.  The
government wants the defendant to accept something
about the other defendants.  The defendant does

not wish to be a witness.

THE COURT: Counsel, if he doesn't want to plea that way - - he is pleading a straight plea. It's not a question of the government, it's a question of the Court. I want to make sure that there is a basis in fact. And if he tells me he is conspiring with somebody else is part of the agreement, but those are not defendants, then for the purposes of the conspiracy charged in this count, there is no basis in fact, then. And if there is no basis in fact, I cannot accept the plea of guilty to Count One, which would mean, then, that he would have to go to trial. And if we go to trial, I'm not going to go to trial just on Count One and not go to trial in Counts Two and Three. We may as well go to trial on all of them.

MS. PLAZA MARTINEZ: The defendant doesn't wish to go to trial on Counts Two and Three.

THE COURT: Then he has to accept the plea as the Court is asking for. He can't have it both ways, Counsel. He either admits to me what he did, or if he doesn't want to admit the extent of his participation with whom. That's the end of the matter; otherwise, I will not make a finding that there is a basis in fact for the plea. (C.O.P. Tr. of 8/1/2005 at pp. 36-38).

THE COURT: The defendants are being provided with
the best professional advise that they can obtain
from court-appointed counsel.

Now, they are free to follow that advise or not
follow it.  They are free to plea to an agreement;
they are free to plea, based on counsel's advice,
to a straight plea.  Fine.  There is no problem
with that.  And when there is a straight plea the
government is not intervening in anything.

But the defendants can't have it the way they want
to.  If they want to plea, fine. I will accept the
plea as long as I make sure that there is a basis
in fact for the plea.... (C.O.P. Tr. of 8/1/2055
at p. 39)

The Court made abundantly clear several things
throughout this discussion with both Petitioner and his
counsel.  First, the exact nature of the charges he was
facing and the specific involvement, his acts, in Count
One.  Second, that it was Petitioner's sole right to either
plead guilty or go to trial, neither the Court nor his
counsel could force him to plead guilty.  Third, that
although Petitioner had received legal advise and guidance
from his attorney it was within his discretion to choose to
follow it or not.  The record clearly indicates that the
Court patiently and in great detail explained to Petitioner
exactly what he was charged with, his criminal exposure by
pleading guilty and that it was his sole, exclusive right

Civil No. 10-1020(PG)                                    Page 16

to either plead guilty or go to trial.  After much ado
Petitioner accepted his responsibility.

> THE COURT: ...So if he doesn't want to answer my
> questions, that's fine, that's a right that he
> has.  If he doesn't want to admit the facts,
> that's a right he has.  But he is not going to put
> conditions on my questions.  So we might as well
> stop right now and we'll go to trial. Fine.
> DEFENDANT: I understood, and my answer is yes.
> THE COURT: Were you provided a vehicle as part of
> the agreement you had with other co-conspirators
> to drive to the bank?
> DEFENDANT: Yes.
> THE COURT: Were you provided with weapons as part
> of the agreement on May 13th to rob the bank on May
> 14th, by a co-conspirator?
> DEFENDANT: Yes.
> THE COURT: And that is as to Count One, the
> conspiracy right?
> DEFENDANT: Yes. (C.O.P. Tr. of 8/1/2005 at pp. 41-
> 42).

The Court then continues with the pertinent questions as to
his involvement in Counts Two and Three which Petitioner
accepted.

    There is no doubt that Petitioner was thoroughly
advised of the charges he was facing and his criminal
liability in the matter.  There is not even a scintilla of

evidence that would induce the Court to wonder as to a possible coercion, misinformation, forcing or lack of knowledge as to Petitioner and his choice to plead guilty with all that it entails.  As such Petitioner can not claim ineffective assistance of counsel, and allegation number one (1) is **DENIED.**

## Ineffective assistance of counsel in her failure to properly advise petitioner as to the evidence provided in discovery

Malpica-García's second allegation relates to the discovery which the Government provided in his case. Although Petitioner admits his Counsel provided him with the discovery given he now alleges that she never informed him how this discovery could have been used in his defense at trial.

This allegation is raised by Petitioner in a perfunctory manner without any reference to the record, unaccompanied by some effort at developed argumentation as such it is deemed waived. <u>Trenkler</u> v. <u>United States</u>, 268 F.3d 16 (1st Cir. 2001) citing <u>United States</u> v. <u>Zannino</u>, 859 F.2d,1,17 (1st Cir. 1990).  Furthermore, as prior excerpts from the Change of Plea Hearing demonstrated, Petitioner never gave a single indication that he was dissatisfied with his attorney; nor his possible doubts about the discovery provided by the Government. In fact the record once again contradicts Petitioner's blanket allegation.

THE COURT: Did counsel receive discovery from the

Civil No. 10-1020(PG)                                           Page 18

        Government?

        MS. PLAZA MARTINEZ: I did, Your Honor.

        And a copy was furnished to the defendant.

        THE COURT: And you discussed that evidence with

        your clients?

        MS. PLAZA MARTINEZ: Yes, Your Honor. (C.O.P. Tr.

        of 8/1/2005 at p. 50).


        THE COURT: And as to your- -having reviewed that

        evidence, both of you, do you agree with the

        evidence in the possession of the government as to

        what each one of you did in this case?

        DEFENDANT: Yes, as to my participation. (C.O.P.

        Tr. of 8/1/2005 at p. 51).

There is no basis in fact for Petitioner's second
allegation as such the same is **DENIED**.

**Sufficiency of the evidence**

    Petitioner's third allegation is a question of
sufficiency of the evidence. Malpica-García contends that
the evidence used to convict him was obtained as a result
of his unlawful arrest.  Once again this allegation is
raised as a blanket assertion without any development or
basis, the same is deemed waived. Id.

    Nevertheless, the Court notes that sufficiency of the
evidence is a federal constitutional claim; the evidence in
support of a conviction must be sufficient to have led a
rational trier of fact to find guilt beyond a reasonable

doubt.  *See* <u>Jackson</u> v. <u>Virginia</u>, 433 U.S. 307, 317 (1979). Generally, sufficiency of the evidence must be raised on direct appeal; if not, a Section 2255 petitioner may not raise it unless extraordinary circumstances compel waiver of this procedural bar.  *See* <u>Awon</u> v. <u>United States</u>, 308 F.3d 133, 142-43 (1st Cir. 2002).  Such extraordinary circumstances include actual innocence, but the "actual innocence exception is quite narrow and seldom used" <u>Id</u>. at 143 (citing <u>Simpson</u> v. <u>Matesanz</u>, 175 F.3d 200, 210 (1st Cir. 1999); ("The actual innocence exception is reserved for extraordinary cases of fundamentally unjust incarceration") <u>Schulp</u> v. <u>Delo</u>, 513 U.S. 298, 320321 (1995).  Malpica-García has not even made an attempt to raise a claim of actual innocence and his conviction is substantiated by the record.   Petitioner pled guilty and accepted his participation in the bank robbery and the Government's version of facts, there is no ineffective assistance of counsel as such Petitioner's third allegation is **DENIED**.

## <u>Vindictive Sentencing</u>

Malpica-García's final allegation is that his sentence was vindictive in nature because he refused to enter into a Plea Agreement with the Government in which he would have had to testify against other co-defendants.

This is yet another baseless allegation raised by Petitioner without any reference to the record or evidence to support it.  "The reasons supporting a sentence one single year above the guideline minimum in Malpica's case

Civil No. 10-1020(PG)                                    Page 20

are obvious and cogent, and that suffices." <u>United States</u>
v. <u>Malpica-García</u>, Appeal No. 07-1556 (1st Cir. Oct. 15,
2008).   Enough said, Petitioner's final meritless
allegation is **DENIED.**

For the reasons previously states this Court deems
Petitioner's Malpica-García's 2255 Petition **DENIED.** The
same fails to meet the <u>Strickland</u> standard of ineffective
assistance of counsel.

**<u>Evidentiary Hearing</u>**

Malpica-García, as part of his 2255 Petition requested
an evidentiary hearing. However, Petitioner has failed to
meet the requirements for such a hearing to be granted.

In order for Petitioner to prosper in his request, he
must be able to demonstrate to the Court by a preponderance
of the evidence, not only an entitlement to the 2255
Petition for relief, but also entitlement to an evidentiary
hearing, <u>David</u> v. <u>United States</u>, 134 F.3d 470, 477-478 (1st
Cir. 1998); <u>Reyes</u> v. <u>United States</u>, 421 F. Supp. 2d 426,
430 (D.P.R. 2006).   Inasmuch as Petitioner has failed in
his burden as to his 2255 Petition, he has failed as well
in the request for an evidentiary hearing.   Therefore
Petitioner's request for an evidentiary hearing is **DENIED.**

The Court now turns its attention to Petitioner's
filing of the Motion to Supplement Petitioner's 2255
Petition Pursuant to Federal Rule of Civil Procedure 15
(D.E. 6).

Federal Rule of Civil Procedure 15 governs amendments

to habeas petitions in a Section 2255 proceeding, thereby permitting otherwise untimely pleading amendments to "relate back" to the date of the timely filed original pleading provided the claim asserted in the amended plea "arose out of conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading". United States v. Ciampi, 491 F.3d 20 at 23 (1st Cir. 2005). However, in the habeas corpus context, the Rule 15 "relation back" provision is to be strictly construed, in light of Congress decision to expedite collateral attacks by placing stringent restrictions on them. Mayle v. Felix, 545 U.S. 644, 657 (2005).  If claims asserted after the one year period of limitations for the filing of Section 2255 petitions could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance. Id at 662.   Accordingly, amended habeas corpus claims generally must arise from the "same core facts" and not depend upon events which are separate both in time and type from events upon which the original claims depend Mayle at 664.

A petitioner does not satisfy the Rule 15 "relation back" standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance. Ciampi at 24.

In Malpica-García's supplemental motion filed March 8, 2010, which is after the one year statute of limitations expired, Petitioner asserts three (3) new claims.  The first two (2) are allegations of ineffective assistance counsel of his appellate attorney and the third claim is as to his classification as a career criminal.  As such they are completely separate new claims and in no way do they relate back to the claims raised by Petitioner in his original, timely filed 2255 Petition.  As such Petitioner's Supplemental Motion is untimely and **DISMISSED WITH PREJUDICE.**

## III. CONCLUSION

For the reasons stated, the Court concludes that Petitioner **EDWIN ROMAN MALPICA GARCIA,** is not entitled to federal habeas relief on the claims.  Accordingly, it is ordered that Petitioner **EDWIN ROMAN MALPICA GARCIA's** request for habeas relief under 28 U.S.C. Sec. 2255(D.E. 1) is **DENIED,** and his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. Sec. 2255 is **DISMISSED WITH PREJUDICE.**  Petitioner's request for evidentiary hearing is also **DENIED.**  **Petitioner's Motion to Supplement** his original 2255 Petition (D.E. 6) is **DISMISSED WITH PREJUDICE.**

## IV. CERTIFICATE OF APPEALABILTY

For the reasons previously stated the Court hereby denies Petitioner's request for relief pursuant to 28 U.S.C. Section 2255.  It is further ordered that no

certificate of appealability should be issued in the event that Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. 2253(c)(2).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th of April 2012.


_s/ Juan M. Pérez-Giménez_
**JUAN M. PEREZ-GIMENEZ**
**UNITED STATES DISTRICT JUDGE**